UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

JAYNE FORTSON,

Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC.,

Defendant.

___________________________________________/

No. CV 11-01454 LB

**ORDER REGARDING MOTION FOR ATTORNEY'S FEES AND COSTS**

**[Re: ECF No. 85]**

## INTRODUCTION

Plaintiff Jayne Fortson, M.D., ("Dr. Fortson") sued Marriott International after she was injured while staying at the Marriott Marquis San Francisco Hotel. Ex. A to Notice of Removal, ECF No. 1 at 12, 15.[1] Dr. Fortson, a paraplegic, was moving between the toilet and her wheelchair when she fell and broke her femur at the hotel. *Id.* She sued for damages and declaratory and injunctive relief based on the following statutory and common law causes of action: (1) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102; (2) California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200; (3) California's Unruh Act, Cal. Civ. Code § 51; (4) California's Disabled Persons Act, Cal. Civ. Code § 54; (5) negligence; (6) negligence *per se*; and

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

(7) premises liability. *Id.* at 13-19.

The parties settled Dr. Fortson's clams for injunctive relief and damages but reserved the determination of attorney's fees and costs for the court. *See* Notice of Settlement and Order Vacating Pretrial Conference and Trial, ECF No. 82 at 2. Dr. Fortson asked for $153,765.00 in attorney's fees, a multiplier of 2.0, and costs of $24,792.81. *See* Motion, ECF No. 85. For the reasons stated below, the court **GRANTS** Dr. Fortson's motion in part and awards $138,388.50 in attorney's fees and $17,555.77 in costs.[2]

**STATEMENT**

On February 16, 2013, Dr. Fortson filed a complaint against Marriott in state court. Notice of Removal, ECF No. 1. In her complaint, Dr. Fortson alleged that she stayed at a handicapped designated room at the Marriott Marquis San Francisco Hotel but encountered several accessibility barriers in the room. Ex. A to Notice of Removal, ECF No. 1 at 12-13. She alleged that the height of the toilet seat and shower seat did not comply with ADA standards. *Id.* at 13. Because the shower was not in compliance with ADA standards, Dr. Fortson was not able to use the shower. *Id.* In addition, Dr. Fortson fell when she attempted to move from the ADA non-compliant toilet seat to her wheelchair, causing a fracture in her right femur. *Id.* Dr. Fortson alleged Marriott's noncompliance proximately caused her injuries.[3] *Id.* at 12.

---

[2] The court finds this case suitable for determination without oral argument. *See* Civil Local Rule 7-1(b).

[3] More specifically, in Dr. Fortson's trial brief, she stated that the toilet seat was 1 ¼ inches lower than the ADA standard and therefore, caused the grab bar that is next to the toilet seat to be too high for her reach. Trial Brief, ECF No. 77 at 3. Unable to use the grab bars, she attempted to transfer herself by placing her right hand on the toilet seat and her left hand on the wheel chair. *Id.* She elaborated further,

> The front of Dr. Fortson's wheel chair is 19 inches, which means she needed to lift herself 3 ¼ inches to successfully transfer to the wheelchair. Fortson was unable to lift herself the 3 ¼ inches from the toilet seat to the chair. As a result, she fell to the bathroom floor. When she fell, her legs went under her body, which caused her right femur to break. *Id.*

About one month later, Marriott removed the suit from state court to this court. Notice of Removal, ECF No. 1. On June 23, 2011, Marriott replaced the non-compliant toilet that Dr. Fortson previously used with an ADA compliant toilet. Maciel Decl., ECF No. 87 at 3; Response, ECF No. 89 at 8. Thereafter, on October 3, 2011, the case was referred to mediation. 10/03/11 Order, ECF No. 22. A few months later, the parties indicated in a joint case management statement that the "mediation resulted in a Stipulation entered into by the parties conceding that the injunctive relief claims raised by Plaintiff's complaint have been resolved." 01/25/12 Statement, ECF No. 24 at 5. Thereafter, the parties engaged in several sessions of mediation to resolve the remaining issues, including attorney's fees. 08/23/12 Joint Statement, ECF No. 38 at 6; 02/27/12 Civil Minutes, ECF No. 27; Pretrial Order, ECF No. 41; 02/19/13 Joint Statement, ECF No. 55 at 3. Ultimately, the parties entered into a confidential settlement agreement and informed the court of their settlement agreement (including the amount of the settlement) on March 7, 2013. Notice, ECF No. 81.

The parties stipulated that the court would determine reasonable attorney's fees and costs. *See* Motion, ECF No. 85 at 11; Thomas Decl., ECF No. 85-3 at 16; 3/12/13 Order, ECF No. 82 at 2. The parties stipulated to, and the court ordered, several extensions of time for Plaintiff to file her motion for fees and costs. *See* 3/18/13 Order, ECF No. 84. Plaintiff filed her motion on March 25, 2013. *See* Motion, ECF No. 85. In it, she asks the court to award attorney's fees for 331.2 hours at $450.00 for a total of $149,040.00, and she also asks for a 2.0 multiplier, which results in a total of $298,080.00. Motion, ECF No. 85 at 14. In her reply, she asks for an additional 10.5 hours for the work to file the reply brief. Reply, ECF No. 90-1 at 2. She also asks the court to tax $24,792.81 in costs. Ex. A to Thomas Decl., ECF No. 85-3 at 22.

## ANALYSIS

## I. LEGAL STANDARD

### A. Statutory Authority for Awarding Plaintiff Attorney's Fees

The ADA permits the court "in its discretion" to award attorney's fees and costs to the "prevailing party." 42 U.S.C. § 12205; *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002). A plaintiff is considered the "prevailing party" if "he or she enters into a legally enforceable settlement agreement against the defendant." *Barrios*, 277 F.3d at 1134; *Richard S. v.*

*Dep't of Developmental Servs.*, 317 F.3d 1080, 1086-88 (9th Cir. 2003). The California Unruh Act similarly permits an award of attorney's fees to a prevailing party. Cal. Civ. Code §§ 52, 54.2, 55. Because the ADA and California law both authorize fee awards in this matter, the court will analyze Dr. Fortson's claim under federal law, except where California law provides for recovery unavailable under federal law. *See George v. Bay Area Rapid Transit District (BART)*, No. C 00-2206 CW, 2007 WL 2778784, at *3 (N.D. Cal. Sept. 21, 2007) (citing *Barrios*, 277 F.3d at 1137); *Saldana-Neily v. Taco Bell of Am.*, No. C 04-4571 MJJ, 2008 WL 793872, at *3 (N.D. Cal. Mar. 24, 2008).

**B. Calculating Fees Under Federal Law**[4]

In the Ninth Circuit, the proper method for determining reasonable attorney's fees is to use the "lodestar method." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). First, the trial court calculates attorney's fees by multiplying the number of hours reasonably spent by counsel by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). In setting the rate, courts consider the factors set forth in

---

[4] For attorney's fee awards authorized under California law, the court applies a similar framework to determine the appropriate fee amount. The fee-setting inquiry in California begins with the lodestar, which represents the number of hours reasonably expended multiplied by the reasonable hourly rate. *Center for Biological Diversity v. County of San Bernardino*, 111 Cal. Rptr. 3d 374, 398 (Cal. Ct. App. 2010); *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010). The lodestar is considered the basic fee for comparable services in the legal community and it may be adjusted by the court based on several factors. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)). The California Supreme Court has explained that "[t]he purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market value for such services." *Id.* (citing *Serrano*, 20 Cal. 3d at 49). To determine whether a multiplier should be applied, the court considers the following factors: (1) the novelty or difficulty of the questions involved; (2) the expertise and capability of counsel; (3) the results obtained; (4) the contingent risk involved in the case; (5) the extent to which the nature of the litigation precluded other employment by the attorneys; and (6) whether the attorneys received public and/or charitable funding. *Serrano*, 20 Cal. 3d at 48-49.

Unlike federal law, California law authorizes the court to apply a multiplier to the lodestar figure to adjust for contingency risk. *Id.*

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

After deciding the appropriate hourly rate, the court then examines the fee applicant's contemporaneously recorded billing records and exclude from the lodestar amount hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Then, in appropriate cases, the court may adjust the lodestar figure based upon the *Kerr* factors that were not subsumed into the initial lodestar calculation. *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). There is a strong presumption that the lodestar figure represents a reasonable fee, and any upward or downward adjustment of that figure is proper only in "rare and exceptional cases." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations omitted).

**II. MEET AND CONFER UNDER LOCAL RULES**

The parties did not meet before filing Dr. Fortson's motion, and their explanations for why they failed to meet conflict. *Compare* Gorog Decl., ECF No. 85-1 at 4, with Sommer Decl., ECF No. 88, ¶ 15. They should have followed the local rules better. *See* Civ. L.R. 54-5. Ultimately, the parties met and conferred after Dr. Fortson filed her motion for attorney's fees and costs and before Marriott filed its opposition. Opposition, ECF No. 89 at 11; Sommer Decl., ECF No. 88, ¶ 16. Under all the circumstances, the court will not deny the motion on a procedural defect.

**III. LODESTAR APPLICATION**

Dr. Fortson requests fees for 331.2 hours in the underlying case (or $149,040.00 at $450.00 per hour) plus an additional 10.5 hours for the reply brief for a total of 341.7 hours (or $153,765.00 at $450 per hour) for two attorneys, Stephen J. Gorog and Mark C. Thomas. *See* Thomas Decl., ECF No. 85-3; Gorog Decl., ECF No. 85-1; Reply, ECF No. 90 at 2. She also asks for a multiplier of 2.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

Motion, ECF No.85 at 14. This chart shows the breakdown:

| Attorney | Hours Claimed | Hourly Rate | Total |
|---|---|---|---|
| Stephen J. Gorog | 85.7 | $450 | $38,565.00 |
| Mark C. Thomas | 256 | $450 | $115,200.00 |
| Multiplier | 341.7 | $450 | $153,765.00 |

To calculate the lodestar amount here, the court first evaluates whether the rates are reasonable and then examines the reasonableness of the time billed.

**A. Reasonable Hourly Rate**

Dr. Fortson's counsel, Mr. Thomas and Mr. Gorog, each filed declarations in support of their requested hourly rates of $450. Thomas Decl., ECF No. 85-3; Gorog Decl., ECF No. 85-1. They also filed the declaration of Stephen Murphy ("Mr. Murphy"), a solo practitioner, who states that Mr. Thomas's and Mr. Gorog's hourly rates of $450 are reasonable in the community for lawyers with comparable experience and reputation. Murphy Decl., ECF No. 85-2, ¶ 7. The court finds that Mr. Thomas's and Mr. Gorog's hourly rates are reasonable.

The first step in the lodestar analysis requires courts to determine a reasonable hourly rate for the fee applicant's services. This determination is made by examining the prevailing market rates in the relevant community charged for similar services by "lawyers of reasonably comparable skill, experience and reputation." *Hensley*, 461 U.S. at 433; *Blum v. Stevenson*, 465 U.S. 886, 895 n.11 (1984); *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992). The "relevant community" for these purposes is the district in which the lawsuit proceeds. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its attorneys, that the requested rates are appropriate. *Jordan*, 815 F.2d at 1263. Once the fee applicant has met its burden, the opposing party "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 978 F.2d at 1397. Courts may also consider its own expert knowledge and experience in setting an hourly rate for the

UNITED STATES DISTRICT COURT
For the Northern District of California

lodestar calculation. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

A plaintiff can satisfy her burden of production in various ways. Affidavits of the fee applicant's attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases, particularly those setting a rate for the attorneys, may be sufficient to establish reasonable hourly rates. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Davis*, 976 F.2d at 1547; *see Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1079 (N.D. Cal. 2010) (looking to rates awarded to counsel in previous cases as evidence of the market value of their services). That said, reasonable hourly rates are "not made by reference to rates actually charged the prevailing party." *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quotation omitted). When deciding the appropriate hourly rate for counsel's services, a court may consider: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988).

***1. Mark Thomas's Hourly Rate***

Mr. Thomas's requested hourly rate is $450. *See* Motion, ECF No. 85 at 14; Thomas Decl., ECF No. 85-3, ¶ 6. After working at Fisher & Phillips LLP and Winston & Strawn LLP for a total of four years, Mr. Thomas formed Brownstein Thomas LLP in 2005 and is a partner at the firm. Thomas Decl., ECF No. 85-3, ¶ 4. All of the work performed by his firm on the suit was performed by Mr. Thomas. Id. ¶ 2. He has experience representing both plaintiffs and defendants in disability discrimination claims, including ADA access suits.[5] *Id.* ¶ 4.

In support of Mr. Thomas's hourly rate, Mr. Murphy submitted a declaration confirming Mr. Thomas's credentials and the prevailing hourly rate for attorneys of similar skill, experience, and reputation. Murphy Decl., ECF No. 85-2, ¶¶ 2, 7. As Marriott points out, Mr. Murphy is a plaintiffs' litigation lawyer, and he did not indicate that he has any experience with disability access

---

[5] In Mr. Sommer's declaration, he states that he conducted a search of Mr. Thomas's litigation history in the Northern District Court of California using Pacer. Sommer Decl., ECF No. 88, ¶ 14. In that report, he found that Mr. Thomas has only litigated one case, *Loskot v. Han*, Case No. 09-04020, involving disability access in this District. *Id.*

cases. *Id.* ¶ 3; Opposition, ECF No. 89 at 20. Despite this, Mr. Murphy indicated that he had obtained jury verdicts in discrimination disability and personal injury cases. Murphy Decl., ECF No. 85-2, ¶¶ 4-5. Mr. Murphy declares that he is familiar with rates charged in plaintiffs litigation by similarly-skilled lawyers in Northern California, and in his experience, Mr. Thomas's rates are "within the mid-range of fees" in the Bay Area for lawyers with comparable experience and reputation.[6] *Id.* ¶ 7.

Marriott also cites cases from the Eastern and Central Districts of California to oppose Mr. Thomas's requested hourly rate of $450. Opposition, ECF No. 89 at 20. In *Delgado v. Mann Bros. Fuel, Inc.*, the attorney asked for, and the court found reasonable, an hourly rate of $350. Case No. CV10-0720, 2010 WL 5279946 (E.D. Cal. Dec. 13, 2010). In *Meola v. JKJ Investments Inc.*, the Central District of California held $425 per hour was reasonable for an attorney who had been practicing for 27 years and focused exclusively on disability access cases for the past seven years. Case No. CV04-00960, 2011 WL 1638163 (C.D. Cal. Apr. 28, 2011). The problem is that the relevant community is the Northern District, not the Eastern District of California or the Central District of California. *See Barjon v. Dalton*, 132 F.3d at 500.

On this record, and based on the court's own knowledge of rates for similar cases with counsel of similar experience, the court finds that Mr. Thomas's current rate of $450 is reasonable.

***2. Stephen Gorog's Hourly Rate***

Mr. Gorog's hourly rate is $450. *See* Motion, ECF No. 85 at 14; Gorog Decl., ECF No. 85-1 at 3, ¶ 8. Mr. Gorog graduated from Quinnipiac University School of Law in 1999. *Id.* ¶ 6. Since 2004, he has been a solo practitioner with a focus on personal injury litigation. *Id.* Before becoming a solo practitioner, he spent four years working on civil litigation matters at Lewis, D'Amato, Brisbois and Brisgaard (now Lewis, Brisbois, Brisgaard and Smith) and one year at Pacific Law

---

[6] Mr. Murphy also states that his understanding of the rates charged in the community derives from many sources, including: 1) researching attorney's fees during his participation in attorney's fees litigation; 2) "discussing attorneys' fees rates, billing and work practices;" and 3) "by obtaining and providing declarations from other attorneys regarding market rates and attorney's fees, billing and work practices." *Id.* ¶ 9.

Partners. *Id.* In his declaration, Mr. Gorog did not indicate whether he has any experience in similar suits. *See generally* Gorog Decl., ECF No. 85-1. Mr. Murphy also confirmed that Mr. Gorog's hourly rate is reasonable within the community for lawyers with comparable experience and reputation. Murphy Decl., ECF No. 85-2, ¶ 7.

Marriott raises the same challenges to Mr. Gorog's rate. Opposition, ECF No. 89 at 18-21. On this record, and considering rates for attorneys in this district, the court finds that Mr. Gorog's current rate of $450 is reasonable.

**B. Reasonableness of the Hours Expended**

Having determined the reasonableness of the hourly rates, the court turns to the second component of the lodestar calculation.

***1. The Standard***

To determine the reasonable hours expended in a case, courts exclude hours that are "'excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. at 434). The party requesting fees must provide detailed time records documenting the tasks completed and the time spent. *See Hensley*, 461 U.S. at 434; *McCown*, 565 F.3d at 1102; *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007); *Ravet*, 2010 WL 3076290, at *2. A fee award ordinarily includes all hours reasonably spent, including fees related to obtaining the fee award. *See Ravet*, 2010 WL 3076290, at *2.

After the party seeking fees presents its evidence supporting the time billed, the party opposing the fees has a "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397-98 (citations omitted). The party opposing fees must specifically identify defects or deficiencies in the hours requested. *See Cancio v. Fin. Credit Network, Inc.*, No. C 04-3755 THE, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005). Conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. *See id.* Courts have reduced fee awards where prevailing counsel engaged in inefficient or unreasonably duplicative billing, or where counsel's billing records contain insufficiently descriptive entries, show evidence of block billing, or billing in large time increments. *See e.g.*,

UNITED STATES DISTRICT COURT
For the Northern District of California

*Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007).

***2. The Objections***

Mr. Thomas's hours total 260.5 (including 10.5 hours for the reply brief) and Mr. Gorog's hours total 85.7. Marriott identifies specific entries that it says demonstrate that counsel either overbilled or overstaffed routine tasks.

First, Marriott challenges billing after April 2011 regarding the injunctive relief claim totaling 28.9 hours (20 hours by Mr. Thomas and 8.9 by Mr. Gorog). The argument here is that the ADA part of the lawsuit could have been resolved easily without litigation, Defendant agreed to remediation, and Plaintiff's continued litigation was unnecessary. Opposition, ECF No. 89 at 12-14. The court observes here that this is a routine issue in ADA cases that often drives early remediation (even before the parties have settled on damages), and this issue demonstrates the appropriateness of the court's general ADA order. Still, Marriott has a point about fees incurred when injunctive relief is likely to be resolved.

Second, Marriott challenges Mr. Thomas's allegedly unnecessary research time[7] on (1) drafting a memorandum and conducting research on damages under Title III of the ADA (2.2 hours), (2) conducting research to determine the damages available under the Unruh Act (3.5 hours), and (3) researching the issue of spoliation of evidence (4.5 hours). Opposition, ECF No. 89 at 15. The law is unambiguous under Title III of the ADA; damages are not recoverable. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable [by private actors] under Title III of the ADA-only injunctive relief is available for violations of Title III.") (citation omitted). The amounts in this category are excessive.

Third, Marriott challenges 6.3 hours spent researching and then moving for relief from General Order 54. The court agrees that this motion incurred unnecessary costs.

---

[7] The Sommer Declaration shows other allegedly excessive research, but Marriott did not address these in its opposition, and the court does not consider them. *See* Sommer Decl., ECF No. 88 at 6. In any event, the time associated with those events appears reasonable and not excessive, duplicative, or unnecessary. *See McCown*, 565 F.3d at 1102.

Fourth, Marriott challenges Mr. Thomas's 1.4 hours spent "traveling to and attending the defense medical examination" of Dr. Fortson. Opposition, ECF No. 89 at 15. Marriott says it was not necessary, and Mr. Thomas says that it was. No one cites cases. The court's research reveals that federal courts generally prohibit third-party observers (including counsel) from attending Rule 35 physical examinations. *See, e.g.*, *Holland v. U.S.*, 182 F.R.D. 493, 495 (D.S.C. 1998) ("The weight of federal authority, however, favors the exclusion of the plaintiff's attorney from a Rule 35 examination absent a compelling reason") (collecting cases); William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 11:2195 (The Rutter Group 2012). *But see* Cal. Code Civ. P. § 2032.510 (permitting counsel's attendance at physical examination but not mental examination).

Fifth, Marriott challenges what it characterizes as essentially double billing for a trial brief that is the close equivalent of the mediation brief. The trial brief billing was 6.0 hours for drafting and 3.0 hours for revising, editing, and finalizing. The mediation brief billing was 17.6 hours. Opposition, ECF No. 89 at 16; *see* Ex. G to Maciel Decl., ECF No. 88-7; Ex. H to Maciel Decl., ECF No. 88-8. The only differences between the two documents are at most four paragraphs and one small chart. *See id.* The court finds that the amount spent on two similar briefs was excessive.

Sixth, Marriot also challenges the 4.1 hours for the complaint as excessive because it is a shell complaint with boilerplate language. Opposition, ECF No. 89 at 16; *see Doran v. Corte Madera Inn Best W.*, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005) (holding that the number of hours counsel claimed for drafting boilerplate ADA complaint should be reduced from 4.3 to 0.5); *Welch*, 480 F.3d at 950 ("the district court did not err in reducing the requested 13 hours for preparation of Welch's motion for attorney's fees by 9 hours because the motion's language was "boilerplate"). The court reviewed the complaint and agrees that it contains routine allegations.

Seventh, Marriott challenges alleged block billing: 51.5 hours by Mr. Thomas and 14.0 by Mr. Gorog. Opposition, ECF No. 90 at 17; Sommer Decl., ECF No. 88, ¶ 13. "Block billing" is discouraged because it may make it difficult for a court to determine the reasonableness of the hours billed. *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100 (D. Haw. 2010). The court notes that here, the "block billing" entries generally only contained two or three tasks. *See* Sommer Decl., ECF No.

88, ¶ 13; Ex. A to Thomas Decl., ECF No. 85-3. These times entries do not overly hinder the court's ability to determine the number of hours that can be reasonably claimed. Still, billing entries for 2/17/13 and 2/18/13 have the same descriptions. This makes it difficult to determine how much time was spent on particular activities. *See Welch v. Metro Life Ins. Co.*, 480 F.3d at 948.

Eighth, Marriott asserts that it was not necessary for both Mr. Thomas and Mr. Gorog to attend the February 3, 2011 "sub rosa" inspection (1.50 hour), the June 23, 2011 site inspection (2.00 hours), and the February 15, 2013 mediation (6.00 hours). Opposition, ECF No. 89 at 15. The court agrees that under the particular circumstances of this case, full billing for both lawyers is not the exercise of billing judgment that the court expects in fees litigation.

Eighth, Marriott objects to 46.9 hours of internal conferences between Mr. Thomas (25.3 hours) and Mr. Gorog (21.6 hours) as "excessive, duplicative, and unnecessary internal conferences." Opposition, ECF No. 89 at 16. Marriott explains that "Mr. Thomas was the lead attorney and handled all aspects of discovery, whereas Mr. Gorog's expertise was limited to the personal injury claim and had minimal involvement in discovery." *Id.* The court recognizes that counsel often meet to discuss litigation strategies and case-related items. Still, this is the sort of situation where the exercise of billing judgment would militate in favor of a reduction of billing.

In all, the court agrees that there are instances of unnecessary duplication of efforts that inflated the number of hours billed and billing that was beyond that necessary for the task.

The approach that the courts in this district have taken in cases with similar billing patterns is a ten-percent across-the-board reduction in fees to reflect the ordinary exercise of billing judgment. *See* 8/13/10 Report and Recommendation, *Overbo v. Loews California Theatres, Inc.*, No. C 07-05368 MHP (LB), ECF No. 92 at 22-24 (collecting cases and summarizing this approach). As the undersigned observed in *Overbo*, the court does not expect counsel to write off time justifiably incurred in litigating a case, but it expects some exercise of billing judgment to ensure that tasks are efficiently delegated and completed in a cost-efficient manner. *Id.* at 23. As in *Overbo*, there is no evidence – either in counsel's declarations or from the billing statements – that counsel made any reduction in the hours that it billed. *See id.* The fact that a case is taken on contingency does not relieve attorneys from regularly reviewing time sheets and billing statements to ensure that attorney

time is spent wisely. As the Supreme Court explained,

> In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Id*. at 24 (quoting *Hensley*, 461 U.S. at 434 (internal quotation omitted)).

The court finds that a 10 percent reduction in hours that Plaintiff's counsel spent litigating this case is warranted to bring the number of hours in line with what would be reasonable in this case. A ten-percent reduction means that the total hours are reduced from 341.7 to 307.53. Because Mr. Thomas and Mr. Gorog worked together on this case the court reduces each of their fee awards by 10 percent, rather than specifically allocating the reduction.

**B. Adjusted Lodestar**

Dr. Fortson contends that the court should apply a 2.0 multiplier to the lodestar figure for risk enhancement. Motion, ECF No. 58 at 17. Specifically, Dr. Fortson asserts that the following factors weigh in favor of a 2.0 multiplier: (1) the great risk taken by Dr. Fortson's counsel; (2) the exceptional difficulty and complexity of the litigation; (3) the preclusion of other employment; (4) the public interest served; and (5) the excellent results obtained. *Id.* at 14.

As indicated above, federal law does not permit enhancement of fees for contingency risk in actions brought under fee-shifting statutes such as section 505 of the ADA. *Dague*, 505 U.S. at 566; *Payne*, 2010 WL 1626588, at 7. California law authorizes the use of multipliers to adjust the lodestar figure to ensure that the figure approximates the fair market value for the particular case. *See Ketchum*, 24 Cal. 4th at 1132. "When a party prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk." *Nat'l Fed. for the Blind v. Target Corp.* ("*NFB*"), No. C 06-1802 MHP, 2009 WL 2390261, at 6 (N.D. Cal. Aug. 3, 2009) (citing *Mangold*, 67 F.3d at 1479). Because Plaintiffs prevailed on both ADA and California statutory claims, the Court may consider Plaintiffs' request to apply a multiplier under California law. *Id*.

In *Ketchum*, the California Supreme Court explained that when considering whether to apply a multiplier, "[i]n effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned

lodestar in order to approximate the fair market rate for such services." *Ketchum*. 24 Cal. 4th at 1132. In particular, "[c]ontingency risk is used as a basis for a multiplier in order to 'compensate for the risk of loss generally in contingency cases as a class.'" *Mannick*, 2007 WL 2892647, at *12 (quoting *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1419 (1991)); *see also Payne*, 2010 WL 1626588, at *7 ("Enhancements for contingency risks are designed to compensate lawyers who take contingency fee cases for the risk of non-payment and/or for anticipated delay in receiving payment.") (citing *Ketchum*, 24 Cal. 4th at 1138). Thus, the aim of a contingency risk multiplier "is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Ketchum*, 24 Cal. 4th at 1133.

Here, Marriott contends that the questions involved are not difficult because it immediately conceded that it failed to comply with the required height under the ADA for toilet seats. Opposition, ECF No. 89 at 12. Therefore, the only question is whether the height of the seat caused Dr. Fortson's injury. *Id.* This, Dr. Fortson's counsel argue, is a difficult question to resolve because Dr. Fortson is a paraplegic who did not feel any pain when her femur was broken. Motion, ECF No. 85 at 16.

Dr. Fortson's attorneys also argue that the lawsuit, which lasted two years, significantly reduced their ability to accept other work. Motion, ECF No. 85 at 18. Mr. Thomas and Mr. Gorog did not suggest that they dedicated themselves exclusively to this case or specify any opportunities that they declined in order to continue this action. *See generally* Thomas Decl., ECF No. 85-3; Gorog Decl., ECF No. 85-1.

The court finds that the circumstances here do not show a risk justifying application of a contingency fee multiplier. Plaintiff's case, while important, was not novel or legally or procedurally complicated, and it resulted in a relatively modest settlement. Nor were the hours spent over the course of two years enough to foreclose other work.[8] Marriott appeared willing to

---

[8] In his declaration, Mr. Sommer stated that he conducted a Westlaw search on Mr. Gorog's and Mr. Thomas's litigation history from February 2011 to March 2013. Sommer Decl., ECF No.

UNITED STATES DISTRICT COURT
For the Northern District of California

remediate the ADA violations that Dr. Fortson identified in her complaint.[9] Also, the court's award of fees at the requested hourly rate of $450.00 offsets the risk and fully compensates the lawyers for their work.

**C. Conclusion**

The total fees award is as follows:

| Attorney | Hours Billed | 10% Reduction | Adjusted Hours | Hourly Rate | Total |
|---|---|---|---|---|---|
| Thomas | 256 | - 25.6 | 230.4 | $450 | $103,680.00 |
| Gorog | 85.7 | - 8.57 | 77.13 | $450 | $34,708.50 |
| **TOTAL** | **341.7** | **-34.17** | **307.53** | | **$138,388.50** |

**IV. COSTS**

Plaintiff seeks costs of $24,792.81. Ex. A to Thomas Decl., ECF No. 85-3 at 22. Marriott challenges $15,090.85 in expert fees, $2,675.00 for the mediator's fee, and $4,562.04 that Plaintiff spent in airfare and hotel stays to attend her deposition. Opposition, ECF No. 89 at 17-18.

**A. Expert Consulting Fees**

The expert fees of $15,090.85 are for Craig Williams ($2,157.62), Dr. Barchuk ($5,000), and Dr. Laura Liptai ($7,933.23). Ex. A to Thomas Decl., ECF No. 85-3. Marriott challenges the fees as not taxable and as unsupported by documentation establishing what they did. Opposition, ECF No. 89 at 81.

First, as to the recoverability of the costs, section 505 of the ADA authorizes a prevailing party to recover costs and litigation expenses, including expert witness fees. *See Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002); *Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1036-37

88, ¶ 8. The results showed that Mr. Thomas had filed 13 complaints and Mr. Gorg had filed 23 complaints since Dr. Fortson filed her complaint. *Id.*

[9] In a letter dated April 5, 2011, Marriot stated: "In light of the foregoing, we again request that the parties enter into a stipulation resolving the issue of injunctive relief and, with supporting documentation, a reasonable monetary demand with respect to the alleged single access violation." Ex. E to Maciel Decl., ECF No. 87-5 at 2.

UNITED STATES DISTRICT COURT
For the Northern District of California

(D. Or. 1996).

Second, as to the documentation of what the experts did, Dr. Fortson explained that three experts were retained because Marriott contested the ADA claim, arguing that the height of the toilet did not constitute a barrier under the ADA. Reply, ECF No. 90 at 9. As such, she "was required to retain Craig Williams, an ADA access consultant to identify the violation; Dr. Laura Liptai, a biomechanical expert to testify about the 1 1/4 inch difference would be a barrier under the ADA; and Dr. Barchuk to testify about the impact of the difference." *Id.*

The court appreciates what happened here: in the end, the issue was damages and not the injunctive relief (an issue that was settled in principle). The parties told the court that in case management statements along the way. *See* 1/25/12 Statement, ECF No. 24 at 5. Still, the case did not settle until the eve of trial. On this record, the court awards the costs.

**B. Mediator's Fees**

Fees for a mediator are not a taxable expense under 28 U.S.C. § 1920.[10] *See Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 (9th Cir. 2001) ("nothing in 28 U.S.C. § 1920 provides for the costs of a mediator"); *see also* Robert E. Jones & Gerald R. Rosen, Cal. Prac. Guide: Fed. Civ. Trials and Evidence § 19:213 (The Rutter Group 2012). Accordingly, the court reduces the costs award by $2,675.00.

**C. Dr. Fortson's Travel Expenses**

Generally, the expenses of witnesses who are parties to the suit are not taxable. *See Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998). Dr. Fortson argues that she should be able to recover her hotel and airfare expenses because she "did not choose to be injured in San Francisco" and was "forced to file her suit" away from her home in Alaska. Reply, ECF No. 90 at 9-10. This is not a sufficient reason for the court to award the $4,562.04.

---

[10] Some courts have awarded mediator's fees based on other federal or state statues but Dr. Fortson did not mention any other authority to support her request for mediator's fees. *See Andjelic v. Marken Marketing, Inc.*, No. 6:05-cv-1877-Orl-22JGG, 2007 WL 2021960, at *2 (M.D. Fla. 2007) (noting that the mediator's fee is not taxable under 28 U.S.C. § 1920 but awarding mediator's fees under 42 U.S.C.. § 12205).

**D. Conclusion**

The court taxes $17,555.77.

**CONCLUSION**

The court grants in part and denies in part Plaintiff's motion. The court awards awards $138,388.50 in attorney's fees and $17,555.77 in costs.

This disposes of ECF No. 85.

**IT IS SO ORDERED.**

Dated: May 1, 2013

LAUREL BEELER
United States Magistrate Judge